JOHNS J. NICHOLSON *et al.*, Respondents, *against* WILLIAM C. CONNER, SHERIFF OF THE CITY AND COUNTY OF NEW YORK, Appellant.

(Decided June 7th, 1880.)

Upon trial of an action of claim and delivery, for goods included in a bill of lading in the name of a person not a party to the action, but which was in the possession of the plaintiffs, the judge instructed the jury that "a bill of lading is a negotiable instrument, and the possession of it controls the property. If the goods are *in transitu* you can give title by handing over and delivering the bill of lading ;" and that a transfer of it is a transfer of the title to the property. *Held,* that as these instructions were erroneous, and there was nothing in the charge to correct the false impression which the jury would receive from such direction, and which might have influenced them in finding a verdict for the plaintiffs, the verdict could not be sustained.

APPEAL from a judgment of the general term of the marine court of the city of New York, affirming a judgment of that court entered on the verdict of a jury, and an order denying a motion for a new trial.

One William M. Winks in 1875 carried on business in his

own name as a packer of fruit, oysters, &c., in Baltimore, Md. He was insolvent, and owed the plaintiffs, who were bankers in Baltimore, about $8,000, for which they held a chattel mortgage as security.   One O'Farrell had recovered a judgment for about $1,200 against Winks in Baltimore.

About the middle of August, Winks, who had orders for canned goods, but was without money to carry on his business, applied to the plaintiff to aid him in filling these orders.   A few days later the plaintiffs promised to aid Winks with money to enable him to fill these orders, on condition that the goods should be considered theirs, and that Winks should deliver to the plaintiffs the bill of lading. therefor when the goods were shipped.   The proceeds resulting from these orders were to be applied to the payment of the debt of $8,000, due from Winks to the plaintiffs.   Thereafter the plaintiffs advanced the money —about $2,300,—for the purpose of enabling Winks to fill these orders.   Winks purchased peaches, canned them, and sold seven hundred and fifty-three cases to H. K. & F. B. Thurber & Co., of New York City.

On August 25, 1875, Winks shipped these seven hundred and fifty-three cases on board of a vessel at Baltimore, and consigned them to Thurber & Co.   In the afternoon of August 25, a certain blank draft, together with a bill of lading, by which it appears that Winks was the consignor, and Thurber & Co. the consignees, was handed by Winks to plaintiffs.   The draft was blank as to amount, because the terms of sale, whether for cash or at four months' credit, were not yet agreed upon between Winks and Thurber & Co.

According to the testimony of the plaintiffs any loss sustained in the transactions was to be borne by the plaintiffs. When these cases arrived in New York, Thurber & Co. refused to accept them, because of the inferior quality of the goods, and after these goods were rejected by Thurber they were seized under a writ of attachment issued from the supreme court to the sheriff of this county in *O'Farrell* v. *Winks.*.   The plaintiffs put in a claim to the goods, and subsequently brought this action of claim and delivery for them, in the marine court, which was tried April 23, 1879.   The jury rendered a verdict

for the plaintiffs, and a motion by the defendants for a new trial was denied, and judgment was entered in plaintiffs' favor. From such judgment and the order denying this motion for a new trial the defendant appealed to the general term of the marine court, where the judgment and order were affirmed; and from such judgment of affirmance the defendant appealed to this court.

*Charles W. Gould*, for the appellant.

*E. Louis Lowe*, for the respondents.

VAN BRUNT, J.—[After stating the facts as above.]—The only question which is necessary to be discussed upon this appeal is whether, in his charge, the learned justice erred in the proposition of law laid down to the jury for their guidance. The charge contained this proposition: that " the bill of lading of these goods is in the name of Winks." [Court reads the bill of lading.] " The property was thereby apparently the property of Winks. A bill of lading is a negotiable instrument, and the possession of it controls the property. If the goods are *in transitu* you can give title by handing over and delivering the bill of lading. Advances are frequently made by capitalists and bankers in that way."

It is conceded upon the part of the respondents' counsel, and it was conceded by the learned judge who wrote the opinion in the court below, that this instruction was erroneous as applied to judgment creditors, and that, if the trial judge had charged this and nothing more, a new trial would of. necessity have to follow. But it is claimed that the trial judge did say more, and that his charge, taken as a whole, tends to modify and explain the part claimed to be objectionable, and conveyed to the jury the correct rule of law on the question involved.

The question which was submitted to the jury in this case was whether the plaintiffs in this action had a title to the property at the time that it was seized by the sheriff. It will therefore be necessary to see upon an examination of the

charge whether or not as a whole it did convey the correct rule of law.

The question as to the transfer of this bill of lading was an important one, because, independent of any previous arrangement which may have been made between Winks and the plaintiffs as to the ownership of these goods, if the bill of lading was transferred to them as security for the moneys which they had advanced to Winks, it undoubtedly would pass the title to the goods as between Winks and his creditors.

In order to establish this proposition, however, it was necessary to prove something further than the mere transfer of the bill of lading. It must be shown that such transfer was made with the intention of passing the title.

The learned judge in his charge to the jury, however, had instructed the jury that the possession of the bill of lading absolutely controlled the property. I have failed to find upon reading the charge any modification whatever of this proposition. It is true that he discussed the evidence in reference to the arrangement, which had been testified to, between the plaintiffs and Winks; and that the fact that the bill of lading is produced from the possession of the plaintiffs is confirmatory of the testimony of the plaintiffs and Winks.

But the attention of the jury is nowhere called to the true rule of law in reference to the bill of lading; and in fact at almost the last of his charge, the judge, in a manner which calls the attention of the jury particularly to what he had already charged, reiterates the false proposition. He says: "I have already charged you as to this bill of lading, and in connection I charge you that a transfer of it is a transfer of the title to the property." This was but putting the original proposition in different words, and the last impression which was left upon the jury by this direction was that the possession of the bill of lading controlled the property, as had been previously charged. It being conceded that such a direction was error, and the false impression which the jury would receive from such direction being nowhere corrected, it is impossible for us to say whether the jury found in favor of the plaintiffs simply because of the fact that the plaintiffs had pos-

session of the bill of lading, or whether they merely treated it as confirmatory of the evidence of Winks and Nicholson as to the arrangement entered into between them.

Because of the error above mentioned it seems to be impossible to support the verdict. The judgment must be reversed and a new trial ordered, with costs to abide the event.

LARREMORE, J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.